NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYLER S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-20521 (RK) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Tyler S.'s ("Tyler")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Tyler's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND**

In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Ricardy Damille's ("Judge Damille") determination at Step Five that Tyler was not disabled?

**A.     PROCEDURAL POSTURE**

Tyler filed an application for a period of disability and disability insurance benefits on September 30, 2020, alleging an onset date of April 15, 2020. (Administrative Record ("AR") at

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

192.)[2] Tyler, at the time of the subject application, was 42 years old, which is defined as a younger individual. (*Id.* at 30 (citing 20 C.F.R. § 404.1563).) The Social Security Administration (the "Administration") denied these requests both initially and on reconsideration. (*Id.* at 57-62, 64-68.) Tyler requested a hearing before an Administrative Law Judge ("ALJ"), (*id.* at 94-96), who thereafter held an online video hearing due to the circumstance presented by the COVID-19 Pandemic on December 17, 2021, (*id.* at 23, 37-55). The ALJ, Judge Damille, issued a written opinion finding that Tyler was not disabled. (*Id.* at 20-32.) The Administration's Appeals Council denied Tyler's request to review Judge Damille's decision. (*Id.* at 1–3.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on November 6, 2023, (ECF No. 3), Tyler filed his moving brief on January 17, 2024, (ECF No. 5), the Commissioner filed an opposition brief on February 7, 2024, (ECF No. 8), and Tyler filed his sur-reply on February 20, 2024, (ECF No. 9).

### B.   JUDGE DAMILLE'S DECISION

In his March 4, 2022 opinion, Judge Damille held that Tyler was not disabled under the prevailing Administration regulations. (*See generally* AR at 20-32.) To reach this decision, Judge Damille analyzed Tyler's application under the five-step process for determining whether an individual is disabled set forth in 20 C.F.R. § 404.1520(a). (*Id.*) At Step One, Judge Damille found that Tyler had not engaged in substantial gainful activity between the alleged onset date, April 15, 2020, and the date last insured, December 31, 2024. (*Id.* at 25-26 (citing 20 C.F.R. §§ 404.1571 *et seq*).) At Step Two, Judge Damille found that Tyler suffered from several severe

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 3-1 through 3-7. This opinion will reference only page numbers in the Record without the corresponding ECF numbers.

impairments, including degenerative disc disease of the lumbar spine, ankylosing spondylitis, arthritis, obesity, and bilateral carpal tunnel syndrome. (*Id.* at 26 (citing 20 C.F.R. § 404.1520(c)).) At Step Three, Judge Damille determined that Tyler did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Damille concluded that Tyler had the residual functional capacity ("RFC") to perform "light work" but that any job he performed must be limited in specified ways:

> [H]e is only able to stand and/or walk for four hours in an eight hour workday. He can occasionally climb ramps and stairs; but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel and crouch; but never crawl. He can frequently handle, finger and feel with the hands. Due to pain symptoms and/or discomfort, he would be off task for ten percent of the workday above normal breaks.

(*Id.* at 27.) At Step Four, Judge Damille concluded that Tyler "is unable to perform any past relevant work." (*Id.* at 30 (citing 20 C.F.R. § 404.1565).) Finally, at Step Five, Judge Damille heard testimony from a vocational expert and concluded that "there are jobs that exist in significant numbers in the national economy" that Tyler could perform. (*Id.* at 31 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The impartial expert testified that the representative jobs Tyler could perform, consistent with Judge Damille's RFC, included office helper, survey worker, and fund raiser II. (*Id.*)

This appeal concerns Judge Damille's reliance on the vocational expert's (the "VE") testimony regarding Step Five.[3]

---

[3] Tyler does not challenge the ALJ's findings at Steps One through Four, including the ALJ's RFC designation. (ECF No. 5 at 1-3.) As this appeal concerns Judge Damille's Step Five determination, and specifically, whether ambiguity existed in the VE's testimony such that Judge Damille could not rely on it, the Court summarizes in greater detail this aspect of Judge Damille's decision.

3

During the administrative hearing, the VE described Tyler's prior work experience as an adult education teacher (categorized as light work) and horticultural worker (categorized as heavy work). Judge Damille asked the following questions of the VE:

> [Judge Damille]: I'd like you to assume the following: let us assume a person, same age and education and work experience as [Tyler]. Let us assume that this individual – let's say light work; occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds. This adds occasional balance to kneel, crouch, but never crawl. Let's also add frequent handling, fingering, and feeling with the hands. Can an individual with these prescriptions perform [Tyler's] past work?
>
> [VE]: The adult education teacher position could be performed but not the other – not the horticultural one.
>
> [Judge Damille]: Okay. What if we were to add the individual could stand and/or walk – let's say standing and/or walking for no more than four hours out of an eight-hour day. How would that affect your answer?
>
> [VE]: I think in my opinion neither job could be performed with that limitation.
>
> [Judge Damille]: Okay. Are there jobs that could work with *these restrictions?* Are there other work that you can note for us?
>
> [VE]: *At light now, right?*
>
> [Judge Damille]: *Yes, at the light level.*
>
> [VE]: Yeah. Yes, I believe so. So one possibility is entitled office helper. The DOT number is 239.567-010. SVP 2, unskilled, light, and national economy is 3,632 positions. Another one is entitled survey worker. And the DOT number for that is 205.367-054. SVP 2, unskilled, light, and national economy is 4,871 positions. And the third one is entitled – okay, a third one is entitled fund raiser II, number II. And the DOT number for that is 293.357-014. SVP 2, unskilled, light, and national economy is 22,960 positions.
>
> [Judge Damille]: Okay. Hypothetical 3, *what if you were to add to that* due to pain symptoms and/or discomfort the individual would be off task for 5% of the workday above normal breaks...

4

(*Id.* 52-53.) (emphasis added).[4] At the conclusion of the VE's testimony, the ALJ asked Tyler's counsel if he had any questions for the VE. (*Id.* at 54.) Tyler's counsel responded that Judge Damille's questions to the VE "satisfy what [he] needed to know" and that he "will pass on any questions." (*Id.*) (emphasis added). Based on this testimony, Judge Damille found sufficient jobs existed in the national economy that Tyler could perform, given his RFC. (*Id.* at 31 (citing 20 C.F.R. §§ 404.1569, 404.1569a).)

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*,

---

[4] The remaining questions that the ALJ asked the VE involved the part of Tyler's RFC regarding off task behavior, but Tyler does not raise any issues related to this aspect of the VE's testimony. (ECF No. 5 at 8.) Based on Tyler's symptoms, his RFC includes the limitation that he would "be off task for ten percent of the workday above normal breaks." (AR at 27.) The ALJ asked the VE to consider a hypothetical with Tyler's limitations, in addition to being off task for ten percent of the workday. The VE responded that most employers would still tolerate someone with these combined limitations. (*Id.* at 53.) However, if the hypothetical individual was off task *more* than 10% of the workday, that would be work preclusive. (*Id.*)(emphasis added). As such, the ALJ appropriately relied on the VE's testimony because it accurately reflected every limitation expressed in Tyler's RFC, including the limitation that Tyler would be off task for ten percent of the workday. (*Id.* at 27, 52-54.)

139 S. Ct. 1148, 1154 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

To be eligible for disability insurance benefits, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if their physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from

6

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At Step One, a claimant must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For Step Two, the claimant must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Step Three requires that a claimant provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant demonstrates that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to the next step. As a precursor to Step Four, the ALJ must determine whether the claimant's RFC permit them to resume previous employment. *Id.* § 404.1520(a)(4)(iv). If a claimant's RFC permits previous employment, the claimants is not "disabled" and not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009) (non-precedential). At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, the claimant will receive disability insurance benefits. 20 C.F.R. § 404.1520(g).

## III.   DISCUSSION

Tyler argues that the ALJ improperly relied on the VE's testimony at Step Five in finding

7

he is capable of performing other work. Specifically, Tyler contends that Judge Damille's question to the VE about available jobs for a hypothetical person with Tyler's limitations did not clearly include the limitation of standing and/or walking for no more than four hours per day. (ECF No. 5 at 7-8.) As such, Judge Damille's exclusive reliance on the VE's testimony to support his Step Five determination is in error. (*Id.* at 8-10.) In response, the Commissioner argues that the ALJ correctly relied on the VE's testimony to support his Step Five determination. (ECF No. 8 at 5-6.) The Commissioner contends that Judge Damille's questions to the VE were unambiguous as evinced by the ALJ hearing testimony. (*Id.*)

When a claimant's RFC includes additional limitations to an exertional category of work (*e.g.* light), the ALJ is advised to seek the assistance of a vocational expert to determine whether work exists in significant numbers that the claimant can perform. *See* SSR 83–12; *Echevarria v. Acting Comm'r of Soc. Sec.*, No. CV 16-3859 (RBK), 2017 WL 4330243, at *4 (D.N.J. Sept. 29, 2017). Unlike in the first four steps of the sequential evaluation, it is the Commissioner who bears the burden of proof at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218).

"The Commissioner can . . . rely on testimony from a VE to meet its step-five evidentiary burden." *Id.* at 616. However, a "vocational expert's testimony concerning a claimant's ability to

perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). "[T]he ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Rutherford*, 399 F.3d at 554.

Based on the VE testimony, the ALJ claims that Tyler is capable of performing the following occupations: office helper, survey worker, and fund raiser II. (AR at 31.) Tyler argues that the VE "never testified that a person limited to standing/walking no more than four hours a day would be capable of performing" these jobs. (ECF No. 5 at 7.) The ALJ asked the VE to consider a hypothetical claimant with similar RFC limitations to Tyler and determine if the hypothetical claimant could do other work in the national economy. (AR at 52-54.) The first hypothetical that Judge Damille posed to the VE asked the VE to assume a hypothetical person with the "same age, and education, and work experience" as Tyler and assume such individual could perform light exertional work with additional non-exertional limitations (*Id.* at 52).[5] In the second hypothetical, Judge Damille added an additional limitation to the initial set of limitations by asking, "[W]hat if we were to *add* the individual could stand and/or walk… for no more than four hours out of an eight-hour day? How would that affect your answer?" (*Id.*)(emphasis added). The phrasing of the question indicates that Judge Damille accurately reflected Tyler's exertional

---

[5] These non-exertional limitations included those reflected in Tyler's RFC (i.e. only occasionally climbing ramps and stairs, "never climbing ladders, ropes, and scaffolds[,]" occasionally "balancing to kneel, crouch[ing, but] never crawl[ing]" and frequently "handl[ing], finger[ing], and feel[ing] with the hands."). (AR at 27, 52.)

9

and non-exertional limitations in his hypotheticals posed to the VE. (*Id.* at 27.)

After the VE testified that such restrictions would preclude Tyler's past relevant work, the ALJ asked if there were other "jobs that could work with these restrictions?" (*Id.* at 52.) Based on the sequential nature of the ALJ's questioning, the VE clearly understood that "these restrictions" referred to all of the limitations the ALJ gave, which included those in the first hypothetical plus the standing and walking limitation in the second hypothetical.[6] (*Id.*) Before answering, the VE confirmed that the ALJ wanted him to name jobs "at [the] light [exertional level] now, right?" (*Id.* at 52-53).

Tyler claims that Judge Damille's question of whether any jobs exist "with these restrictions" did not specify to the VE whether the question "pertained to the first 'light' hypothetical, or the second hypothetical wherein the individual could only stand/walk for four hours a day." (ECF No. 5 at 8.) Further, Tyler points to the VE's clarifying question as evidence that he was "understandably, uncertain as to which hypothetical he was to assume" because the two different hypotheticals represented two different exertional levels. (ECF No. 5 at 8-9.) This argument hinges on the incorrect assumption that the "added limitation of 4 hours standing and walking" somehow takes Tyler's RFC out of the light exertional level. (ECF No. 8 at 6-7.) Tyler's limitation to standing and walking for four hours does not mean he is incapable of performing jobs designated at the light exertional level. *See Echevarria,* 2017 WL 4330243, at *5 (quoting *Hence v. Astrue,* 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012) *report and recommendation*

---

[6] Judge Damille's questioning of the VE clearly showed that each subsequent hypothetical built on the limitations expressed in the prior hypothetical. (AR at 52-53) (where first hypothetical asks VE to consider someone with a portion of Tyler's RFC limitations, and the second hypothetical asked "what if we were to add" to hypothetical one, a limitation on sitting and standing for no more than four hours.) The record belies Tyler's assertion that the VE was confused as to the sequential nature of these questions such that the VE would interpret Judge Damille's third question of whether any work exists for someone with "these restrictions" as referring to only those limitations expressed in the first hypothetical. (ECF No. 5 at 8-10.)

*adopted*, 2012 WL 6697109 (E.D. Va. Dec. 21, 2012) ("an RFC limiting standing or walking to about two hours does not mandate a finding that Hence could only perform sedentary work").

Further, Tyler's argument misinterprets the definition of light work. (ECF No. 8 at 7.) He claims that the Social Security rules define light work as "at least 6 hours of standing and walking." (ECF No. 5 at 9.) However, the regulations define light work involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567 (emphasis added).[7] Tyler's argument relies on a conjunctive reading of the regulation (i.e. that light work involves all the requirements listed), when the definition is clearly disjunctive. (*Id.*) Judge Damille's second hypothetical, which included all the limitations of the first hypothetical, simply reduced one aspect of light exertional work (i.e. standing and walking), and still reflected the reference to light work outlined in the first hypothetical. (AR at 52-53.) Therefore, the VE "could not have clarified between the first and second set of limitations by asking" his question "because all the hypothetical questions were for light exertion." (ECF No 8 at 8 (citing AR at 53).) The simple fact that the VE asked a clarifying question of "[a]t light now, right?" does not imply that the VE viewed "the hypothetical limitation to standing or walking for a maximum of four hours per workday" as not "meet[ing] the definition of 'light' work." (ECF

---

[7] The Administration has adopted the definitions in the Dictionary of Occupational Titles (the "DOT") and uses them when making disability determinations. 20 C.F.R. § 404.1567. The DOT further highlights the disjunctive nature of this definition by stating that "a job should be rated [l]ight [w]ork" when it involves "[e]xerting up to 20 pounds of force occasionally...and/or up to 10 pounds of force frequently" or "when it requires walking or standing to a significant degree; *or*... when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or... when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials." DOT 293.357-014, 1991 WL 672578; DOT 205.367-054, 1991 WL 671725; DOT 239.567-010, 1991 WL 672232 (emphasis added).

11

No. 9 at 2.) The VE's question was confirmatory, and did not evidence ambiguity.

Additionally, at the administrative hearing, Tyler's counsel did not ask any clarifying questions following this alleged ambiguous exchange between the VE and the ALJ. (AR at 54.) While Tyler accurately notes that at Step Five, the Commissioner bears the burden of proof, allowing Tyler to secure "a remand for a lack of specific VE testimony when [his counsel] could have elicited the specific VE testimony at the hearing" incentivizes "claimants to refrain from questioning the VE" so they can get a "second bite at the apple." *Kuntz v. Colvin*, No. 15-767, 2016 WL 6634942, at *8 (M.D. Pa. Sept. 30, 2016), *report and recommendation adopted*, No. 15-767, 2016 WL 6599994 (M.D. Pa. Nov. 8, 2016); *but see Christopher S. v. Kijakazi*, 20-13664, 2022 WL 613848, at *5 (D.N.J. Mar. 1, 2022) (remanding case when plaintiff's counsel questioned the VE about an ambiguity and VE admitted to being confused, yet the ALJ still relied on VE's testimony in its opinion.)

Lastly, Tyler cites to *Christopher S. v. Kijakazi* to support the proposition that the ambiguity in the record necessitates a remand. (ECF No. 5 at 9 (citing *Christopher S.*, 2022 WL 613848 at *5).) In *Christopher S.*, the plaintiff's RFC included a limitation on jobs with "strict production quotas," yet the VE offered jobs that had required production quotas. (*Id.*) When claimant's lawyer cross-examined the VE, he admitted that he "thought [claimant's RFC] was fast-paced production with *some* quotas." (*Id.*) (emphasis added). Nevertheless, the ALJ in *Christopher S.* "relied on the vocational expert's ambiguous testimony to conclude that plaintiff was not disabled." (*Id.*) The instant case is clearly distinguishable. Tyler's counsel stated the ALJ's questioning "satisf[ied] what [he] needed to know" and he "pass[ed] on any questions." (AR at 54.) Further, the VE in *Christopher S.* admitted to being confused by the ALJ's questioning whereas no such record evidence exists here. (*Id.* at 52-54.)

The VE's clarifying question to the ALJ gives no support to Tyler's argument because light work can include limitations to sitting and/or standing for only four hours of an eight hour work day. *See Echevarria,* 2017 WL 4330243, at *5. Certainly, this question alone -- coupled with the fact that Tyler's counsel had the opportunity to clarify the alleged ambiguity but failed to ask any questions of the VE – does not support a finding of ambiguity such that the ALJ's reliance on the VE's testimony is in error. *Id.*; *see also* Kuntz, 2016 WL 6634942, at *8. Accordingly, Judge Damille properly relied on the VE's testimony at Step Five when finding Tyler not disabled because he could perform jobs which existed in significant numbers in the national economy. (AR at 31.)

## CONCLUSION

Having reviewed the record as a whole, the Court affirms the affirmance of Judge

Damille's decision by the Administration's Appeals Council. The Court issues an order consistent with this Memorandum Opinion.

                                                                                        _____
                                                                                        **ROBERT KIRSCH**
                                                                                        **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 9th, 2024